Slattery *v.* Standard Sanitary Manufacturing Co.,
Appellant.

Argued October 16, 1933.

Before TREXLER, P. J., KELLER, CUNNINGHAM,
BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Sidney J. Watts* of *Baker & Watts,* for appellant.

*Austin L. Staley,* for appellee.

OPINION BY TREXLER, P. J., February 1, 1934:

This is a Workmen's Compensation case. The plaintiff was a blacksmith and on Tuesday, October 27, 1931, engaged in the straightening out of a hook, when it slipped off the work bench and struck him, on the right side of the groin. He had immediate pain, felt sick at his stomach and numb in his left leg, but continued to work. Shortly afterwards, he went to the toilet and found that his whole groin was swollen and one testicle enlarged. Thereafter the timekeeper came around and the plaintiff reported to him that he was hurt. He continued to work a short time after the injury, but not to any extent. He is not sure as to what he did the following days, but on Friday and Saturday he lay down and did not leave his home.

On November 4th, he went back to work and the assistant foreman directed him to a doctor who sent him to a hospital where the surgeon found he was suffering from a double hernia and an injured testicle, his scrotum being two or three times the natural size. The doctor wrote out a prescription for a suspensory and told him to go back to work, using the words, "You soldier it through, hold your job, don't lift anything that is heavy, let the helper do the lifting." He then went back to work and was able with the aid of the suspensory to continue his employment but did not do any lifting. He had pain all the time, worked in misery and after he got a truss it hurt him. He received the same wages as he had prior to the accident. On the 28th of March, 1932, he stopped work.

We quote his words, "It wasn't because I was injured that I quit work, no. They laid us off; I was laid off."

The appellant argues that the proof of hernia does not measure up to the standard required by the amendment of Act of 1927, P. L. 186, Section 1.

The claimant testified that there were external marks following the contact with the hook which indicated that the rupture had descended into the scrotum immediately after the blow took place. Notice of the injury was communicated to a representative of the employer within forty-eight hours after the occurrence of the accident. The external marks were shown to a fellow workman a short time after the accident occurred and the party to whom he exposed his body noticed a swelling. His wife also testified to the visible manifestations of the injury on the same day when it was alleged to have taken place. We think there was a sufficient compliance with the act above referred to.

The second point raised is that the employe refused to submit to an operation and therefore entry of award for compensation of total disability should have been suspended, Act of June 2, 1915, P. L. 736, Article 3, Section 306 E; June 26, 1919, P. L. 642, Section 1; April 13, 1927, P. L. 186, Section 1. We see no merit in this contention. The testimony of the doctor as to this, as above stated, is, "I found his scrotum about two or three times the natural size, with a very large and inflamed testicle." After a further description, the doctor testifies, "I then offered him one of two things—either to put a truss on him or to operate on him, surgical procedure for his hernia; and he concluded that we would put a truss on, which we did." This is certainly not a refusal to submit to an operation. An offer was presented to the injured man in an alternative form and he had a right to accept either one or the other.

The appellant contends that there is no evidence to support the finding that as a result of the accident the claimant became totally disabled at the approximate date which he ceased to work. This is the most serious question in the case. We have the testimony of Dr. Kuehner who examined the claimant on the 1st of May and again on the 7th of September, 1932. He testified that in the condition the man was, "it would be very painful and more or less dangerous to continue to work at the character of blacksmith work with a hernia, and certainly with the hydrocele as I found it when I examined this man." That his condition would make him suffer pain and discomfort which would tend to become more intense as the day progressed and that a long continued attempt might result in damage which might unquestionably be detrimental to his physical welfare; that his physical examination was such that in the estimation of the doctor, he would not be employed in the open market if a prior examination was had and that any form of manual effort would tend to aggravate the condition.

The doctor, on September 23, 1932, the date the second hearing was had, followed the description of the effects of the injury by the statement that the man was totally disabled. The appellant strenuously contends that this information would not warrant a finding that he was disabled on the 28th of March when he quit work. We do not think that the fact that he was working up to the 28th day of March is conclusive as the absence of total disability. This man stated that he had a family to support and that was the reason he went back to work; that he suffered continuous pain and was seriously incommoded. The doctor testified to a condition at the time of the hearing that was the same as was present when claimant stopped work. He was inviting serious trouble and possible death from hernial strangulation when he worked. The testimony of the doctor bears out the in-

ference that he should not have worked when he did and that therefore total disability existed at the time when he stopped work. Under proper standards he was unfitted to perform any manual employment. The case is close, but a majority of the court think that the award should be sustained.

The judgment is affirmed.